IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Edward Shoptaw, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 1:21-2152-SAL |
| | ) | |
| v. | ) | **Order adopting [54] Report and** |
| | ) | **Recommendation** |
| Walmart, Inc., and Wal-Mart Stores East, LP, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Paige J. Gossett (Report), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.).

## PROCEDURAL BACKGROUND

Edward Shoptaw (Plaintiff) filed this action in the Aiken County Court of Common Pleas pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, alleging failure to accommodate and discriminatory termination against his former employer, Walmart, Inc., and Wal-Mart Stores East, LP, (Defendants) after he sustained injuries at work. [ECF No. 9.] Defendants removed the action to this court and moved for summary judgment. [ECF Nos. 1, 40.] Plaintiff opposed the motion. [ECF No. 47.] In her Report, the magistrate judge recommends Defendants' motion be granted. The matter is now ripe for ruling.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (citing

28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, a party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[i]n the absence of *specific* objections … this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

## SUMMARY JUDGMENT

Summary judgment is appropriate if a party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment bears the

burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the non-moving party must then, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 233. A party asserting that a fact is genuinely disputed must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier for fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## FACTUAL BACKGROUND

The Report sets forth in detail the relevant facts, however, because of the detailed factual findings required by the ADA, a brief recitation is included here. The factual findings are either undisputed or viewed in a light most favorable to Plaintiff, to the extent that they are supported by the record. Neither party objects to the factual findings in the report, and the most relevant factual details are included below.

### I.    Plaintiff hired and sustained injury

Plaintiff was hired in December 2019 as a "Customer Availability Process Team Associate" (CAP associate) at Defendant's store in North Augusta, South Carolina. [ECF No. 54

at 1.] This position, more commonly known as a "stocker," requires associates to perform physical tasks. *Id*. Essential functions of a CAP associate according to the position description supplied by Defendants include "binning and picking merchandise … arranging and organizing merchandise and supplies … stocking and rotating merchandise … setting up, cleaning, and organizing product displays … [and] processing freight," among others. [ECF No. 40-8 at 2.] The job description also includes a list of necessary physical activities, including moving up and down a ladder; grasping, turning, and manipulating objects of varying size and weight; reaching overhead and below the knees; bending, twisting, and stooping; and moving, lifting, carrying, and placing merchandise and supplies weighing up to fifty pounds without assistance. *Id*.

Plaintiff injured his shoulder in early March 2020 when he fell pulling a heavy pallet at work. [ECF No. 54 at 1.] Plaintiff notified his manager of the injury the next day, and the day after that he visited Doctor's Care. *Id*. Defendants sent a letter to Doctor's Care regarding Plaintiff's visit asking the treating healthcare provider to "[p]lease consider some type of 'Temporary Alternate Duty' status if [Plaintiff] is unable to perform [his] regular duties at this time." [ECF No. 47-4 at 1.] Included with the letter was a Work Status Report (WSR), a standard form provided by Defendants with a section for healthcare providers to provide an injury description and diagnosis as well as a list of work restrictions. [ECF No. 47-3 at 1.]

At the initial appointment at Doctor's Care, a nurse practitioner diagnosed Plaintiff with "thoracic spine pain" and imposed significant limitations on his physical activities. *Id*. Specifically, the nurse practitioner restricted Plaintiff from standing, kneeling/squatting, bending/stooping, pushing/pulling, twisting, climbing stairs/ladders, or reaching overhead.[1] *Id.* Additionally, Plaintiff was limited to two hours per day of walking and four hours per day grasping/squeezing,

---

[1] Each activity was designated "Max Hours per day 0." [ECF No 47-3 at 1.]

extending/flexing the wrist, and reaching. *Id*. Plaintiff was prohibited from lifting or carrying objects more than ten pounds for more than one hour per day. *Id*. He was also ordered to take one sit/stretch break per hour. The nurse practitioner authorized Plaintiff to return to work on March 16, 2020. *Id*. Plaintiff returned the WSR to Defendants, which constituted a request for a reasonable accommodation under Defendants' policies. [ECF No. 47-9 at 1.]

## II.     Second doctor's visit

Upon returning to work, Defendants placed Plaintiff on "temporary alternative duty" in the apparel department, where he folded returned clothes, answered phones, and assisted customers. [ECF No. 54 at 2.] This position purportedly complied with Plaintiff's work restrictions. *Id*. Eight days after returning to work, Plaintiff complained to a supervisor of a backache and stated he could not perform his alternate duties. *Id*. He returned to the same Doctor's Care facility for further diagnosis and treatment, but this time he was seen by a physician. *Id*.

Despite complaining to the physician that his pain was getting worse, the physician declared Plaintiff "[one] hundred percent better," and removed the work restrictions previously set by the nurse practitioner. [ECF No. 47-22 at 4.] Indeed, the physician simply crossed through the section of the WSR where the nurse practitioner had listed Plaintiff's work restrictions. *Id.* The physician stated Plaintiff "[m]ay return to work with no restrictions[.]" *Id*. Upon returning to work, Plaintiff was removed from his temporary alternate duty in the apparel department and returned to his job stocking merchandise as a CAP associate. [ECF No. 54 at 3.] Plaintiff told a manager he was still experiencing pain and should not have been released from his work restrictions, despite the physician's report. *Id*.

### III.    Plaintiff's third doctor's visit and subsequent work assignments

Plaintiff returned to Doctor's Care a third time still complaining of back pain. *Id*. at 4. He was again seen by the nurse practitioner who put his initial restrictions in place. *Id*. The nurse practitioner reversed the physician's recommendation and reinstated work restrictions, saying "[i]t was clear to me that the restrictions were necessary for the health and safety of [Plaintiff]." *Id*.

The nurse practitioner's second WSR reimposed a total restriction on Plaintiff "kneeling/squatting, bending/stooping, pushing/pulling, twisting, and climbing stairs/ladders." [ECF No. 40-11 at 4.] The nurse practitioner limited Plaintiff to two hours per day of standing. *Id*.[2] Plaintiff could lift or carry objects up to ten pounds from one hour per day to one to two hours per day. *Id*. The nurse practitioner released Plaintiff to return to work the same day and said the restrictions should remain in place until Plaintiff's next appointment. *Id*.

Plaintiff returned to work and notified a supervisor his restrictions had been reinstated. [ECF No. 54 at 4.] Rather than returning him to temporary alternative duty, however, Plaintiff was assigned tasks outside of his work restrictions, including "pushing, pulling, kneeling, squatting, bending [and] stooping." [ECF No. 47-22 at 8.] Plaintiff complained about these assignments to Defendants' human resources department, but his managers continued to assign him tasks outside of his restrictions. *Id*. Plaintiff continued to visit Doctors' Care for back pain throughout the spring and summer of 2020, and each time he returned to work with the same restrictions. *Id*. at 6.

---

[2] The nurse practitioner did, however, increased the number of hours per day Plaintiff could walk to eight hours per day, up from two, and likewise increased the number of hours Plaintiff could grasp/squeeze, flex/extend his wrist, reach, and reach overhead from four hours per day to eight. Eight is the highest number of hours provided on the WSR, on a scale of zero to eight.

### IV.     Plaintiff resigns his position

In December 2020, Plaintiff was told to unload a grocery truck. [ECF No. 47-2 at 2.] Plaintiff told his manager unloading trucks was outside of his work restrictions, and she reassigned him to the apparel department. *Id*. The manager told Plaintiff he had to have all returned apparel items put back on the shelves or he could turn in his work badge. *Id*. Based on this statement, Plaintiff believed he must either complete the assignment or he would be terminated. *Id*.

Despite being assigned to the apparel department, the tasks Plaintiff was asked to perform included kneeling, bending, and stooping to pick up clothing items off the floor and return them to the shelves. *Id*. Plaintiff believed this assignment would be physically impossible for him to do on his own, so he asked for assistance from managers and co-workers. *Id*. Nobody helped Plaintiff, and, rather than attempting to complete the task on his own, he turned in his badge, resigning his position. *Id*.

## DISCUSSION

The magistrate judge recommends this court grant Defendants' motion for summary judgment on the ground Plaintiff failed to provide evidence he could have performed the essential functions of his CAP associate position with or without a reasonable accommodation, an element of both his failure to accommodate and discriminatory discharge claims. [ECF No. 54 at 12-13.] Plaintiff objects to seven specific statements in the Report, each of which falls into one of three general categories. First, Plaintiff objects to the magistrate judge's finding he failed to identify a reasonable accommodation that would allow him to perform the essential functions of his job. [ECF No. 58 at 4.] Next, Plaintiff argues the magistrate judge improperly shifted the burden of proving undue hardship from Defendants to Plaintiff. *Id.* at 3. Finally, he objects the magistrate

judge did not consider Defendants' failure to engage in a good faith interactive process to see if a feasible work accommodation could be reached. *Id.* at 16-17.

### I.     Failure to identify a reasonable accommodation

Identifying a reasonable accommodation that would allow Plaintiff to perform the essential functions of his CAP associate position is required to establish both his failure to accommodate and discriminatory discharge claims. For the reasons below, the court finds Plaintiff has failed to identify such an accommodation. This is dispositive.

#### a.  Failure to accommodate

Plaintiff alleges Defendants wrongfully denied his request for a reasonable accommodation in violation of the ADA. [ECF No. 9 at 12.] To succeed on his failure to accommodate claim, Plaintiff must prove (1) that he had a disability within the statutory meaning; (2) that the employer knew of his disability; (3) that a reasonable accommodation would permit him to perform the essential functions of the position; and (4) that the employer refused to make the accommodation. *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). Only once Plaintiff has established all four elements of his failure to accommodate claim would the burden shift to Defendants to put forth evidence demonstrating that a reasonable accommodation would impose an undue hardship. *Perdue*, 999 F.3d at 959; *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002) (quoting 42 U.S.C. § 12112(b)(5)(A)).

#### b.  ADA discriminatory discharge claim

Along with his failure to accommodate claim, Plaintiff also alleges discriminatory discharge. [ECF No. 9 at 13.] To establish discriminatory discharge, Plaintiff must show (1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his

8

employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n. 9 (4th Cir. 2004)). "Evidence of all four of these elements is necessary to survive summary judgment." *Id*.

A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Champ v. Baltimore Cnty.,* 884 F. Supp. 991, 994 (D. Md. 1995) (quoting 42 U.S.C. § 12111(8)). To satisfy this requirement, an individual must be able to meet all the requirements of his job despite his handicap. *Id*. (quoting *Tyndall v. Nat'l Educ. Cntrs.,* 31 F.3d 209, 213 (4th Cir. 1994)). The inquiry is whether Plaintiff could perform the essential functions of his job, and if not, whether any reasonable accommodation by his employer would enable him to perform those functions. *Id*.

### c. Plaintiff has not identified a reasonable accommodation that would allow him to perform the essential functions of his CAP associate position.

"[W]hether [a] reasonable accommodation would enable a disabled person to perform the essential functions of his job is … a fact-specific inquiry. An accommodation is unreasonable if it requires elimination of an essential duty." *Champ*, 884 F. Supp. at 999 (quoting *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1078–79 (6th Cir. 1988)). Courts in this district have held that temporarily assigning an employee to light duty is insufficient as a matter of law to establish that the plaintiff has identified an accommodation that would allow him to perform the essential functions of his original position. *Josey v. Wal-Mart Stores E., L.P.*, C/A No. 0:11-2993-CMC-SVH, 2013 WL 5566035, at *4 (D.S.C. Oct. 8, 2013) ("Wal–mart is under no legal obligation to accommodate an employee by "reallocat[ing] essential job functions or assign[ing] an employee 'permanent light duty'" or by "creat[ing] a new position as an accommodation.").

9

Plaintiff cannot show that his temporary alternative assignment folding clothes in the apparel department allows him to perform the essential elements of his CAP associate position. Essential elements of the CAP associate position include binning merchandise, arranging and organizing supplies, stocking and rotating merchandise, setting up, cleaning, and organizing product displays, and processing freight. [ECF No. 40-8 at 2.] CAP associates are also expected to move up and down ladders, grasp, turn, and manipulate objects of various sizes and weights, reach overhead and bend below the knees, and move supplies weighing up to fifty pounds without assistance. *Id*. Plaintiff's temporary assignment in apparel required none of these things. The essential functions of Plaintiff's apparel assignment were limited to folding clothes, answering phones, and assisting customers. [ECF No. 54 at 2.]

Plaintiff's argument that temporary light duty in the apparel department is a reasonable accommodation is unavailing. *See Champ*, 884 F. Supp. at 1000; *Josey* 2013 WL 5566035, at *3–*4. Because Plaintiff has not identified any reasonable accommodation that would allow him to perform the essential functions of his CAP associate position, Defendant's motion for summary judgment is granted.

The court briefly addresses Plaintiff's remaining objections related to burden of proof and the interactive process.

## II.     Burden of proof and failure to engage in interactive process

To defeat an employer's motion for summary judgment, an employee/plaintiff "need only show that an 'accommodation' seems reasonable on its face …. Once the plaintiff has made this showing, the defendant/employer then must show special … circumstances that demonstrate undue hardship in the particular circumstances." *U.S. Airways v. Barnett*, 535 U.S. 391, 401–02 (2002). Plaintiff objects to the Report on the ground he has identified a reasonable accommodation–

temporary light duty– and the magistrate judge should have placed the burden on Defendants to prove this accommodation would impose an undue hardship. But the magistrate judge correctly found Plaintiff failed to show a reasonable accommodation that would allow him to perform the essential functions of his job. Because the burden of proving an accommodation would impose an undue hardship does not shift to Defendants until *after* Plaintiff has established the prima facie elements of his ADA claims, Plaintiff's objection related to the burden of proving undue hardship fails.

"[A]n employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible." *Id*. (citing *Barber ex rel. Barber v. Colorado Dept. of Rev.*, 562 F.3d 1222, 1231 (10th Cir. 2009)). "'[L]iability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions.'" *Id*. (citing *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012)). Plaintiff maintains that Defendants had an obligation to engage in an interactive process with him to identify a reasonable accommodation that *would have* allowed him to perform the essential functions of his CAP associate position. But again, Plaintiff has not identified an accommodation that would allow him to perform the essential functions of his job. Without this, Defendants cannot be held liable for failing to engage in an interactive process. Because Plaintiff cannot meet his burden as to a reasonable accommodation, this objection also fails.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the court adopts the Report, ECF No. 54, in its entirety and hereby incorporates the Report by reference. As a result, Defendant's Motion for summary judgment, ECF No. 40, is **GRANTED**, and this case is dismissed with prejudice.

IT IS SO ORDERED.

August 17, 2023  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge